IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW M. DUPLESSIS, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| vs. | )   Case No. 21-cv-00095-JPG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on petitioner Andrew M. Duplessis' ("Petitioner" or "Duplessis") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. On August 21, 2019. Petitioner pled guilty to one count of possession with intent to distribute methamphetamine. On January 30, 2020, the Court sentenced him to serve 216 months in prison on Count 1 for possession with intent to distribute methamphetamine. He did not appeal his conviction. Duplessis' criminal Case No. is 19-cr-40047-JPG.[1]

**I.  Background**

In June 2019, a grand jury issued an indictment for Duplessis for Possession with intent to distribute methamphetamine (Crim. Doc. 1). Attorney Robert Elovitz ("Mr. Elovitz") was appointed to represent Duplessis. Duplessis notified the Court that his final pre-trial would be converted into a change of plea hearing on August 21, 2019. Duplessis pled guilty, in an open plea, on that date and sentencing was scheduled for November 26, 2019 (Crim. Doc. 20). During that hearing, Duplessis, under oath, stated he was fully satisfied with counsel and representation by Mr. Elovitz. (Crim. Doc. 60, p. 4). Additionally, in the colloquy regarding the sentencing

---

[1]  Any document referencing the docket in Duplessis' criminal case shall hereby be referred to as "(Crim. Doc.)." Documents from Duplessis' civil Section 2255 case shall be referred to as "(Doc.)."

guidelines, Duplessis stated him, and his attorney spoke about the Federal Sentencing Guidelines and the 18 U.S.C. 3553(a) factors. *Id*. at 7. Additionally, when asked about the "rough" guideline calculation, Mr. Elovitz stated "Defendant's criminal history comes into play greatly in this instance." *Id*. at 8. Additionally, Mr. Elovitz stated:

> The Government has provided two sets of incidents that may affect his relevant conduct, so that the actual potential base offense levels can vary by, in his case, I think -- the Government and I have talked on the methamphetamine issue -- can vary as much as six levels and potentially with other relevant conduct they have disclosed in another report, but we could be at a difference of four levels additional, so we could have a ten-level swing either way at sentencing. It's quite an open range, Judge.

*Id*. The Court asked if Duplessis understood that he will be able to review the presentence report and make objections to the report. *Id*. Duplessis stated he understood. *Id*. at 8-9.

A pre-sentence investigation report ("PSR") was issued on October 21, 2019 ("Initial PSR"). (Crim. Doc. 21). Duplessis had fourteen days to object, which counsel for Duplessis filed on November 4, 2019 (Crim. Doc. 22). The Initial PSR determined Duplessis' relevant conduct involved 2.7 kilograms methamphetamine in the form of "ice," recommended two-level firearm enhancement, three-level reduction for acceptance of responsibility, Offense Level 35, and Criminal History Category II. *Id*. The guideline range was 188-235 months, the statutory maximum term was 20 years. *Id*.

The Government moved to strike Duplessis' objections. Duplessis objected, stated his relevant conduct was "far below" 2.7 kilograms and objected to the firearm enhancement, stating he never was in possession of handguns "during the time frame in question." (Crim. Doc. 22). Duplessis also objected to each paragraph with the exception of two paragraphs that amounted to actually involved amounts of ice seized from Duplessis upon his arrest. *Id*. The Government moved to strike the objections, which this Court denied (Crim. Doc. 23, 35).

On December 13, 2019, the Addendum to the Initial PSR was issued (Crim. Doc. 32). The Addendum, issued by U.S. Probation, asserted information and calculations in the Initial PSR were accurate. *Id*.

Mr. Elovitz sought continuation of the sentencing hearing. The Government conducted additional interviews in response to Duplessis' relevant conduct and firearm objections. (Doc. 17, p. 8). As a result of these interviews, on January 27, 2020, Probation issued a revised presentence report ("Revised PSR"), whereby the relevant conduct increased from 2.7 kilograms to 3.28 kilograms. (Crim. Doc. 46). The Revised PSR continued to apply the two-level firearm enhancement. *Id*.

During sentencing on January 30, 2020, the Court asked Duplessis if he received the Revised PSR, which he stated he had. (Crim. Doc. 61, p. 3). When asked about the objections to the PSR, Mr. Elovitz stated "Defendant would announce…he's going to withdraw the objections as to the weight of the sentence in question for relevant conduct purposes." *Id*. at 4. When the Court asked Duplessis if that was correct and Duplessis stated "Yes, your Honor." Duplessis was still objecting to the firearm enhancement. *Id*. at 5. On January 30, 2020, the second revised PSR ("Second Revised PSR") was issued, which corrected the date/year on the fact page and changed "581.175 ounces" to "581.175 grams" in paragraph 15. (Crim. Doc. 47).

The Government called three witnesses and introduced letters that Duplessis sent to two of the witnesses while incarcerated. In one letter attached to the Government's response, Duplessis threatened witness John Reed regarding his cooperation with the Government. (Doc. 17, Exh. C p. 8). Upon consideration of the witnesses and evidence provided, the Court found the firearm enhancement applicable not only "by a preponderance of the evidence, but the evidence is overwhelming that this Defendant was known to possess firearms during drug transactions

even though he didn't show it every time, but it was there." (Crim. Doc. 61, p. 48-49). Additionally, the Court noted that the letters and threats were "inconsistent with acceptance of responsibility." *Id*. at 61. The Court stated it was not going to be taking two points back for acceptance of responsibility but noted it for the record. The Court, in consideration of all the 3553(a) factors, sentenced Duplessis to 216 months in prison. *Id*. at 63.

**II.     § 2255 Motion**

In his timely motion, Petitioner raises the following claims of constitutionally ineffective assistance of counsel Robert Elovitz in violation of his Sixth Amendment rights:

1)  Attorney Robert Elovitz provided ineffective assistance of counsel by failing to advise petitioner that his sentence could be based on additional "ghost dope" and a firearm enhancement;

2) Attorney Elovitz provided ineffective assistance of counsel by failing to object to the alleged due process violation, specifically, the fact that Duplessis was denied due process because the Revised PSR was not "timely" disclosed.

Additionally, Petitioner also makes a due process claim. Petitioner states he was denied due process because the Revised PSR was not "timely" disclosed.

Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts, the Court has determined that it is plain from the motion and the record of the prior proceedings that Petitioner is not entitled to relief.

**III.    Analysis**

    **a.  Sixth Amendment**

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However,

"[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019).

Duplessis asserts violations of his Sixth Amendment rights. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for [his] defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).

In a case where a petitioner pled guilty as a result of alleged ineffective assistance of counsel, to satisfy the first prong of the *Strickland* test, the petitioner must show that his counsel's advice leading to the plea was outside the range of professionally competent assistance. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citing *McMann*, 397 U.S. at 771; *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). To satisfy the second *Strickland* prong, he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would

not have entered a guilty plea and instead would have gone to trial. *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Hill*, 474 U.S. at 59; *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010); *Wyatt*, 574 F.3d at 458; *Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea. *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony that he would have insisted on going to trial is not enough. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); see *Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice."). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

In some instances, counsel's deficient performance is so stark that prejudice can be presumed such as where counsel abandoned a defendant or utterly failed to represent her. This presumption can occur:

> in the face of a "complete denial of counsel" or denial at a "critical stage" of the litigation. The presumption would also be triggered if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," or if, due to the timing of the trial or other factors, "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is [] small."

*Smith v. Brown*, 764 F.3d 790, 796 (7th Cir. 2014) (quoting *United States v. Cronic*, 466 U.S. 648, 659-60 (1984); internal citations omitted). A critical stage in a criminal case is "every stage

of the criminal process between arraignment and appeal that either addresses a substantive issue or risks loss of a procedural right." *See Schmidt v. Foster*, 911 F.3d 469, 491-92 (7th Cir. 2018).

The Court addresses each of Duplessis' arguments in turn.

a. **Counsel's failure to advise petitioner that his sentence could be based on additional "ghost dope" and a firearm enhancement.**

Duplessis argues that Mr. Elovitz failed to advise him that his sentence could be based on "hearsay statements concerning ghost drugs or constructive possession of a gun." (Doc. 1, p. 5). Additionally, Duplessis asserts that Mr. Elovitz failed to file a motion to withdraw the guilty plea so facts relating to the gun could be presented to a jury. *Id*. In response, the Government states that Duplessis fails to attach an affidavit in support of its claim, Duplessis' arguments are contradicted by Mr. Elovitz' affidavit attached to the Government's response, and the record clearly shows Duplessis' assertions are incorrect. (Doc. 17, p. 21-22).

Upon review of the record and filings, Court agrees with the Government. First, petitioner did not attach an affidavit, therefore providing no sworn support to contradict the other sworn statements provided in these filings. *See, e.g., Kafo*, 467 F.3d at 1067 ("the affidavit" is the "threshold requirement" and that "the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions").

However, understanding Duplessis is moving *pro se*, the Court finds that his argument further fails because it is contradicted by Mr. Elovitz' affidavit. (Crim. Doc. 17, Exh. A). In his sworn affidavit, Mr. Elovitz stated he advised Duplessis regarding the relevant conduct and firearm issues. "Well prior to Andrew Duplessis change of plea, I advised him of the possibility of a gun enhancement, at length and on multiple occasions. I also discussed the concept of

relevant conduct and 'ghost dope'…" *Id*. Additionally, Mr. Elovitz stated that "[a]t no time prior to sentencing did Andrew Duplessis request I withdraw his guilty plea so the facts of any gun enhancement or 'ghost drugs for relevant conduct purposes' could be presented to a jury." *Id*.

Petitioner contends his claim does not fail for a failure to submit an affidavit because the due process violations "are a direct result of the 'lack of' support of the relevant conduct submitted to the PSR to enhance petitioner's sentence." (Doc. 20, p. 2). Petitioner states that because the drug quantity and firearm enhancement was not supported by reliable information, his claim should not fail. The Court disagrees and will address this point below.

Additionally, while the Court is mindful of competing testimonies, the Court is persuaded by the Court's record in Duplessis' criminal case. During the plea colloquy, this Court asked Duplessis if he discussed the guidelines with his attorney and Duplessis stated he had. Additionally, Mr. Elovitz stated there were multiple discussions with his client and the Government regarding the disparity in the relevant conduct, stating that "we could have a ten-level swing either way at sentencing." (Crim. Doc. 60, p. 8). "[T]he representations of the defendant. . . at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). The petitioner bears a heavy burden of overcoming the presumption that her sworn plea colloquy statements were true. *See United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012). Here, Duplessis acknowledged he was fully satisfied with Mr. Elovitz' representation, was guilty of the charged offense, and discussed the guidelines with his attorney.

Defense counsel also filed multiple objections of the relevant conduct issues, including

objections to the "ghost dope" paragraphs. (Crim. Doc. 22, p. 2). Further, during sentencing, Mr. Elovitz stated that they would be "withdraw[ing] the objections as to the weight of the sentence in question for relevant conduct purposes." (Crim. Doc. 61, p. 4). The Court asked Duplessis if that was correct, and he stated that it was. *Id*. Duplessis did so knowingly, and voluntarily. *Id*. Again, the Court finds that such a declaration in open court carries a strong presumption of verity. *Blackledge*, 431 U.S. at 73-74.

Duplessis states that he requested that counsel failed to "investigate" the cases the government was using against him "as conspiracies and non-convictions to support a drug total of more than 3.28 kilograms, therefore enhancing his guideline range." (Doc. 20, p. 4). First, the case that Duplessis uses as support that failure to investigate a claim can constitute ineffective assistance refers to an attorney's failure to investigate *during trial*. *Adams v. Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006) (finding trial counsel's failure to investigate a crucial witness during trial amounted to ineffective assistance of counsel). Here, Duplessis argues that counsel did not investigate witnesses supporting a sentence enhancement, which the Court must find under a preponderance of evidence standard, as opposed to a finding of guilt beyond a reasonable doubt. Further, a failure to investigate here was not fatal – defense counsel had an opportunity, which it utilized, to cross-examine the witnesses.

The Court finds that Duplessis does not meet the first prong of the *Strickland* test. Specifically, the Court does not find that Mr. Elovitz's representation was outside the range of professionally competent assistance.

Duplessis additionally also cannot show prejudice – the second prong under *Strickland*. First, facts "relating to guns and ghost drugs" for sentence enhancement purposes is not presented to a jury but found by the Court, under a preponderance of the evidence, as the Court

did so here. The Government notes that the Government could have sought a superseding indictment to include an additional consecutive 18 U.S.C. 924(c) offense instead of the firearm enhancement. (Crim. Doc. 17, p. 24).

The Court is not persuaded that Duplessis satisfies either prong under *Strickland.* As the Government noted, the Court found it "inconsistent" that Duplessis was receiving two points off for acceptance of responsibility, even though he was threatening witnesses in letters.

**b. Due process violation, and whether counsel failed to object to the due process violation.**

The Court will address Duplessis' second and third arguments – his alleged due process violation and his counsel's failure to object. Duplessis states he did not receive enough time, pursuant to Fed. R. Crim. Proc. 32, to review the Revised PSR. Specifically, Duplessis states that on the morning of sentencing on January 30, 2020, Mr. Elovitz gave him a copy of the Revised PSR, which was filed on January 27, 2020, thirty minutes before the hearing.

Rule 32 of the Rules of Civil Procedure states that the "probation officer must give the presence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless defendant waives this minimum period." Fed. R. Crim. Proc. 32(e)(2). Rule 32 also states that a probation officer must submit a report "[a]t least 7 days before sentencing" "the presentence report and an addendum containing unresolved objections, the grounds for those objections, and the probation officer's comments on them." Fed. R. Crim. Proc. 32(g).

The initial PSR was issued on October 31, 2019. Thus, the initial PSR was issued more than 30 days prior to the sentencing. The Addendum was filed on December 13, 2019. However, the Revised PSR was issued on January 27, 2020, three days prior to the sentencing hearing. The

Revised PSR contained additional statements made by witnesses and added over 800 grams of ghost drugs. (Doc. 1, p. 6).

"A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal[.]" *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). "A federal prisoner cannot bring defaulted claims on collateral attack unless he shows both cause and prejudice for the default." *Id*. (internal citations omitted). "Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is "actually innocent" of the crimes of which he was convicted." *Id*. Duplessis failed to raise this issue on direct appeal and has made no argument that he is "actually innocent" of the offenses to which he pled guilty. Thus, his failure to raise this claim will only be excused if he can demonstrate cause and prejudice for the default. Here, the Duplessis does not make any arguments establishing cause and the Court can find none. The Court finds Duplessis' claims insufficient to support good cause for procedural default.

In fact, the Court finds more support that Duplessis waived his due process claim. Mr. Elovitz's affidavit states that he reviewed the contents of the Revised PSR and reviewed the Revised PSR with Duplessis. (Doc. 17, Exh. A). During the sentencing, Mr. Elovitz stated that he wishes to withdraw his relevant conduct objections and proceed with sentencing. (Crim. Doc. 61, p. 4). As stated in Rule 32, while 32 requires notice, it also provides that a defendant can waive those notice requirements. Fed. R. Crim. P. 32(e)(2). Additionally, the Court asked Duplessis if he received the January 27, 2020 report. (Doc. 61, p. 3). Defendant stated "[y]es, Your Honor." Additionally, the Court asked if Duplessis reviewed the addendum dated December 13. *Id*. at 4. Duplessis stated "[y]es, Your Honor." In fact, the only objections Duplessis and his attorney maintained were the firearm enhancement objections. The Court does

not find it persuasive that Duplessis did not object to the lack of time to review the Revised PSR during sentencing and, instead, stated the exact opposite. *United States v. Knorr*, 942 F.2d 1217, 1221 (7th Cir. 1991) ("we have held that by participating in a sentencing without an objection based on the ten-day requirement, the defendant waives the minimum period requirement of Fed. R. Crim. P. 32"). Again, the Court finds that such a declaration in open court carries a strong presumption of verity. *Blackledge*, 431 U.S. at 73-74.

Thus, because the Court finds there was no due process violation, Duplessis cannot show ineffective assistance of counsel for failing to object. The Court finds Duplessis has failed to meet the ineffective assistance under the first and second prongs of *Strickland*. The Court does not feel this is a case that amounts to a "complete miscarriage of justice."

    **c. Violation of constitutional rights on the basis of accurate and reliable information**

In Duplessis' reply, he expounds on his argument from his petition that his due process rights were violated because relevant conduct and firearm enhancement was based off inaccurate and unreliable information. Specifically, Duplessis states that the witnesses the Court heard, John Reed, Alan Elder, Timothy Walkters, and Amy Brozowski, were unreliable and violate his due process rights of being sentenced on the basis of accurate information. (Doc. 20, p. 7-8).

Duplessis bases his arguments on the holding of *United States v. Helding*, 948 F.3d 864, 872 (7th Cir. 2020). *Helding* held the sentencing record did not contain enough to find that the CI-provided information was sufficiently reliable to find Helding responsible for a substantial amount of marijuana seized. *Id*. Specifically, the *Helding* court found that a finding of marijuana (over 32 times the amount marijuana seized) based only on statements made by confidential informants to law enforcement and memorialized in a PSR was insufficient and fell short of protecting a defendant's due process rights to be sentenced on the basis of accurate information.

*Id*. The court was concerned about a sentence imposition where a Court is unable to determine credibility. Duplessis states that, pursuant to *Helding*, the PSR in his case did not contain any determination of the informant's reliability and did not state how the evidence corroborated what the CI's told law enforcement. (Doc. 20, p. 9-12).

The Court finds Duplessis' arguments unpersuasive. First, the Court did investigate the credibility of the witnesses. The witnesses testified during Duplessis' hearing regarding the relevant conduct. The *Helding* court found the trial court violated the defendant's due process because it *solely* relied on the PSR to apply the defendant's sentence. In fact, the *Helding* court advised trial courts that "[w]hile it's not required that a judge hear personally from witnesses under oath at a sentencing hearing about drug quantities, we think it's not a terribly bad idea to do so when the witness is going to provide the basis for ... a defendant's relevant conduct." *Helding*, 948 F.3d at 871, quoting *United States v. Robinson*, 164 F.3d 1068, 1070 (7th Cir. 1999). The Court did so here. Further, defense counsel had an opportunity to cross-examine or present conflicting evidence. *United States v. Rollerson*, 7 F.4th 565, 572 (7th Cir.), cert. denied, 142 S. Ct. 631 (2021) ("At least in the absence of conflicting evidence, the PSR's assertions concerning the controlled-buy amounts were sufficiently reliable to support a finding that they were proven by a preponderance of the evidence. In due process terms, the defense had the opportunity to present conflicting evidence about the controlled buys").

"How to proceed with the reliability inquiry and on what to base the reliability finding are committed to the district court's sound judgment." *Helding*, 948 F.3d 864, 872. Here, the Court did what the Seventh Circuit advised is the best course of action – bring witnesses to testify and determine the reliability of witnesses under oath. The Court did so and determined "[i]n finding the firearm evidence overwhelming and overruling petitioner's objections, the

Court stated that it "has heard the evidence and finds actually refreshing consistency between all of the witnesses." (Doc. 14, p 48). The Court found the firearm enhancement appliable "it's not only by a preponderance of the evidence, but the evidence is overwhelming that this Defendant was known to possess firearms during drug transactions even though he didn't show it every time, but it was there." *Id*. at 49.

Thus, finding during Duplessis' sentencing hearing that the Court evaluated and determined the witnesses reliable regarding the relevant conduct and firearm enhancement, the Court does not find that Duplessis' due process rights were violated.

### IV.     Conclusion

For the foregoing reasons, pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court finds that it is plain from the motion and the record of the prior proceedings that Duplessis is not entitled to relief under § 2255. Thus, there is no need for an evidentiary hearing. The Court **DENIES** Duplessis' § 2255 Motion (Doc. 1) and **DIRECTS** the Clerk of the Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**Dated: February 28, 2022**

                                              /s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**